UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KENISHA MOORE,

                        Plaintiff,                  **MEMORANDUM AND ORDER**

      v.                                                    18-cv-4786 (ST)

COUNTY OF NASSAU, NASSAU COUNTY
SHERIFF'S DEPARTMENT, OFFICER JEFFREY
MOODY shield # 2432 and OFFICER JOANN
ARENA shield # 2701, in their individual and official
capacity, and OFFICERS "JOHN and JANE DOES
1-10" not known by full name to Plaintiff, but known
to Defendant, in their official and individual capacities.

                        Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

      Before this Court is a motion for summary judgment by the County of Nassau, Nassau County Sheriff's Department, Officer Jeffrey Moody ("Officer Moody"), Officer Joann Arena ("Officer Arena"), and unnamed Officers John and Jane Does 1-10 (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 56. Kenisha Moore ("Plaintiff") is a resident of Nassau County and a former pretrial detainee in Defendants' custody. Plaintiff brings this action under 42 U.S.C. § 1983 ("Section 1983") alleging violations of her Fourteenth Amendment rights. Plaintiff also brings multiple claims under New York State law pursuant to this Court's pendent jurisdiction. For the reasons detailed below, Defendant's motion for summary judgment is GRANTED, in part, and DENIED, in part.

## BACKGROUND

      The facts of this case are largely disputed. Where necessary for the analysis herein, this statement of facts will present both the Defendants' and Plaintiff's version of events. However,

1

on a motion for summary judgment, all factual ambiguities are resolved in favor of the Plaintiff. *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).

This case arises out of Plaintiff's time as a pretrial detainee in Defendants' custody. On August 25, 2017, Officers Moody and Arena were assigned to transport Plaintiff to Nassau County Correctional Center following her arraignment at Nassau County District Court. Def. L.R. 56.1 Statement ¶ 10-11, ECF No. 55-2; Pl. L.R. 56.1 Counterstatement ¶ 33, ECF No. 56-2. Plaintiff was transported in the rear of a police van, which was equipped with metal benches along both sides and a metal partition running along the middle of the van. Pl. L.R. 56.1 Counterstatement ¶ 34, 36, ECF No. 56-2. Plaintiff was transported with two other female detainees, who were seated on her side of the partition, and one male detainee, who was seated on the other. *Id* at ¶ 37.

Upon entering the van, Plaintiff requested to have Defendants secure her seatbelt because she had recently had surgery. Neither Officers Moody nor Arena responded to the request. *Id* at ¶ 35. Plaintiff was handcuffed at her front, and claims she was unable to secure her own seatbelt because the belts required use of both of her hands independently. *Id* at ¶ 38. Defendants maintain that Plaintiff had access to the seatbelts and declined to use them. Def. L.R. 56.1 Statement ¶ 12, 14, ECF No. 55-2.

When exiting the garage, Plaintiff alleges that Defendants "rammed" into the garage door which had not fully opened. Pl. L.R. 56.1 Statement ¶ 41, ECF No. 56-2. The force of that collision knocked Plaintiff to the ground. Plaintiff made a request for medical attention which was ignored. *Id* at ¶ 42. The van could not immediately be loosened from the garage gate, and so plaintiff was moved to a second van with an identical seating arrangement. *Id* at ¶ 43-44.

Plaintiff requested to have her seatbelt secured. *Id* at ¶ 44, 46. Plaintiff alleges that Defendants denied this request and were verbally abusive towards Plaintiff. *Id* at ¶ 44.

Defendants allege that the garage door had fully risen at the time Defendants pulled the van forward. Def. L.R. 56.1 Statement ¶ 15, ECF No. 55-2. However, a malfunction caused the gate to suddenly roll down, striking the van near the light bar on the roof of the vehicle. *Id.* Defendants maintain that Plaintiff did not make a request for medical attention at this time. *Id* at ¶ 17.

While on the way to Nassau County Correctional Center, the van stopped short, causing Plaintiff and the other detainees to be thrown to the floor. Pl. L.R. 56.1 Counterstatement ¶ 47, ECF No. 56-2. Plaintiff landed on her knees and wrist, causing injuries to both. *Id.* Plaintiff stated that everyone in the rear of the van screamed in an attempt to get the Defendants' attention and receive medical help, but those cries were again ignored. *Id* at ¶ 48; Pl. Opp. Br. Ex. A at 47, ECF No. 56-3. Defendants reportedly continued to insult Plaintiff and told her "we are not taking any of you to the hospital." Pl. L.R. 56.1 Counterstatement ¶ 49-50, ECF No. 56-2. Defendants maintain that Officer Moody drove between 15 and 20 miles per hour the entire trip and did not stop short. Def. L.R. 56-1 Statement ¶ 19-20, ECF No. 55-2.

Plaintiff experienced substantial pain in her arm, knees, and back but did not receive medical attention. *Id* at ¶ 51-52. Plaintiff concedes that she was able to walk on her own after her fall. Def. L.R. 56.1 Statement ¶ 21, ECF No. 55-2. Once Plaintiff posted bail, she walked to a nearby medical center. Pl. L.R. 56.1 Counterstatement ¶ 51, ECF No. 56-2. Plaintiff's x-rays were negative for any fractures or gross dislocation, but she received a cast as Plaintiff was informed there may be a hairline fracture which would not appear on an x-ray. *Id* at 53. Plaintiff

also later learned from her doctor that she had reinjured her knee which had previously been treated surgically. *Id* at 53.

Plaintiff filed this action on August 23, 2018, alleging constitutional violations under the Fourteenth Amendment along with several state law claims. Def. L.R. 56.1 Statement ¶ 6, ECF No. 55-2.

## JURISDICTION

Plaintiff brings three claims pursuant to 42 U.S.C. § 1983. Jurisdiction is therefore based on 28 U.S.C. § 1331. Plaintiff's state law claims, arising under a common nucleus of operative fact with her federal claims, are properly before this Court pursuant to 28 U.S.C. § 1367.

## LEGAL STANDARD

### I.     Summary Judgment Standard

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if the fact "might affect the outcome of the suit under the governing law…" *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists as to a material fact when "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

On motions for summary judgment, the moving party bears the initial burden of establishing the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the non-moving party must then show there is a genuine dispute for trial. *Id.* The burdens on both parties as to the underlying elements are aligned as they would be at trial. *Id.* at 254. "Where, as here, the nonmovant bears the burden of proof at trial, 'the movant may show prima facie entitlement to summary judgment' by either (1)

'point[ing] to evidence that negates its opponent's claims' or (2) 'identify[ing] those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact.'" *Barlow v. Male Geneva Police Officer,* 434 Fed. Appx. 22, 25 (2d Cir. 2011) (quoting in part *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir. 2006)).

When considering a motion for summary judgment, the Court must construe "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

Assessment of a witness's credibility is a function reserved for the jury and is not appropriate on summary judgment. *Scholastic, Inc. v. Harris,* 259 F.3d 73, 87 (2d Cir. 2001). The Second Circuit has recognized an exception where the Plaintiff relies "almost exclusively on his own testimony, much of which is contradictory and incomplete." *Jeffreys v. City of N.Y.*, 426 F.3d 549. 554 (2d Cir. 2005).  However, "summary judgment cannot be defeated by the presentation by the Plaintiff of but a 'scintilla of evidence' supporting [his] claim…[the] preliminary question for the judge [is] not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 726 (2d Cir. 2010) (quoting in part *Liberty Lobby,* 477 U.S. at 251-252).

## II.     Section 1983

Section 1983 provides individuals with a private right of action against individuals acting as state officers "who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983; *see also*

5

*Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir. 2007). A pretrial detainee's claim for unconstitutional confinement is governed, not by the Eighth Amendment's prohibition on cruel and unusual punishment, but rather the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Because pretrial detainees have yet to be convicted of crime, detainees may not be subject to punishment at all, and so the constitutional protection under the Fourteenth Amendment must be, at a minimum, "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id* (quoting *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983)). To succeed on a Section 1983 claim a plaintiff must show, (1) a violation of a right protected by the Constitution or federal law and, (2) that the violation was committed by an individual acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## DISCUSSION

Plaintiff brings three federal claims and multiple state law claims stemming from her transport from the Nassau County District Court to Nassau County Correctional Center in Defendant's custody. Plaintiff alleges that while being transported, where Plaintiff fell twice in the back of Defendants' police van, Defendants violated her Fourteenth Amendment right to Due Process through deliberate indifference to, (1) her reasonable safety and (2) her medical needs. Furthermore, Plaintiff's third claim alleges Defendants' failure to institute safety policies and training regarding seating and seat belting of detainees rose to the level of municipal liability under *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

Defendants, as officers of Nassau County and the county's sheriff's department, do not contest they were acting under the color of state law in transporting Plaintiff. Instead, Defendants argue that the record, viewed in the light most favorable to Plaintiff, does not contain a triable

6

issue of fact that could lead a reasonable jury to conclude Plaintiff suffered a violation of her Due Process Rights under the Fourteenth Amendment. Def. Br. at 3, ECF No. 55-3. Taking each of Plaintiff's claims in turn below, Plaintiff has demonstrated a triable issue of fact as to her deliberate indifference to reasonable safety claim, but Defendants' motion for summary judgment is granted as to Plaintiff's medical needs claim and *Monell* claim. As one of Plaintiff's federal claims remains, this Court retains pendent jurisdiction over Plaintiff's state law claims as well.

### I. Plaintiff has Demonstrated Triable Issues of Material Fact Precluding Summary Judgment on Plaintiff's Deliberate Indifference to Reasonable Safety Claim.

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). A claim for deliberate indifference has two prongs, objective and subjective. *Id.* The objective prong requires a "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process . . . ." *Id.* The subjective prong requires a plaintiff to show the officers acted with deliberate indifference which roughly equates to recklessness. *Id* (citing *Farmer v. Brennan*, 511 U.S. 836-37 (1994)). Plaintiff has successfully demonstrated a triable issue of material fact on both prongs. Summary judgment is therefore inappropriate on this claim.

#### a. Objective Prong.

In order to show an objective deprivation of the right to reasonable safety, a plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to [her] health." *Id* at 30 (internal quotations omitted). There is no single test to determine whether a risk is unreasonable, instead claims are evaluated based on "contemporary

7

standards of decency." *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995). "Even in the rare case where the Court has imposed bright-line limits, those limits have been flexible and dependent upon the circumstances." *Darnell*, 849 F.3d at 31.

Defendants argue that Plaintiff's transport to Nassau County Correctional Center without a seatbelt does not meet the standard for objective seriousness, relying in large part on the Second Circuit's decision in *Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012) and the Southern District's decision in *Carrasquillo v. The City of New York*, 324 F.Supp.2d 428 (S.D.N.Y. 2004). Def. Br. at 8-12, ECF No. 55-3.[1] In *Jabbar*, the Second Circuit held that the failure to provide a seatbelt, without more, does not rise to the level of an objectively serious risk. 683 F.3d at 58. The court in *Carrasquillo* held the same. 324 F. Supp. 2d at 437. In making this argument, Defendants rely exclusively on the testimony of Officers Moody and Arena. Resolving all factual ambiguities in favor of Plaintiff tells a substantially different story. *See Johnson*, 680 F.3d at 236.

When Plaintiff was first shown to the transport van, she requested to be secured by a seatbelt to avoid reaggravating injuries recently treated through surgery. Pl. L.R. 56.1 Counterstatement ¶ 35, ECF No. 56-2. This request was ignored. *Id.* Plaintiff was handcuffed in front of her body and while seatbelts were available, she was unable to buckle herself in as the seatbelts were not stationary, requiring the use of both hands independently to keep the belt steady. *Id* at ¶ 38. Upon exiting the garage at the Nassau County Correction Center, Plaintiff asserts that Officer Moody drove into the garage door, not that the door accidentally fell on the

---

[1] Defendants also argue that because New York State law did not require seatbelts in the rear seats of passenger vehicles in 2017, Defendants' failure to use a seatbelt could not amount to a constitutional violation. Def. Br. at 9, ECF No. 55-3. This argument is unpersuasive as Defendants point to no authority to indicate that that New York's vehicle code was intended to treat rear passenger seats in vehicles the same as sideways facing bench seating in a police transport van. Furthermore, Defendants similarly cannot provide authority suggesting that because Defendants actions were not prohibited by state law the conduct *per se* cannot pose an objective risk to Plaintiff.

top of the van. *Id* at ¶ 41. The force of the impact tossed Plaintiff against the inside of the van and knocked her to the floor. *Id* at ¶ 42. When moved to a replacement transport van, Plaintiff again requested to be secured by a seat belt, which was met with verbal abuse. *Id* at ¶ 44. During transport, Officer Moody stopped short after travelling at such speeds that Plaintiff thought the short stop was a vehicle collision. *Id* at ¶ 47. Plaintiff and other detainees fell to the metal floor, causing her injuries. *Id*. Plaintiff asserts everyone in the van was "screaming" that they had been injured but that their cries were ignored. Pl. Opp. Br. at 9, ECF No. 56.

In *Harris v. City of New York*, No. 15-cv-6341 (NG) (JO), 2018 WL 1997974 (E.D.N.Y. Apr. 27, 2018), this Court had the opportunity to determine what "more" was required in the context of the general rule established in *Jabbar* that lack of seatbelts is not an objectively serious risk. There, Plaintiff was handcuffed behind her back in a van nearly identical to the one at issue here. *Harris*, 2018 WL 1997974 at *2. The transporting officers received an emergency call, causing them to respond at high speeds. *Id.* Plaintiff fell to the floor and began kicking and screaming in an effort to get the officers attention. *Id*. The defendants in *Harris* similarly relied on *Jabbar* and *Carrasquillo* arguing that seatbelts were not a constitutional necessity on the grounds that the buses used to transport detainees were not equipped with seatbelts at all, as seatbelts can pose a threat to police officers and detainees if used as weapons. *Id* at *5. However, that rationale was inapplicable to the van in *Harris*, and is inapplicable here, because the vans were already equipped with seatbelts and officers simply declined to use them. *Id.* That seat belting was possible, combined with high speeds, led the Court in *Harris* to find that the plaintiff had successfully demonstrated a triable issue of material fact as to objective seriousness. *Id* at *4.

While there are differences between the case in hand and *Harris*—the transport in *Harris* lasted multiple hours whereas no such length of time is alleged here—Plaintiff has successfully

9

demonstrated a triable issue of material fact on the issue of objective seriousness. A jury could reasonably conclude that Defendants' failure to use available seatbelts, collision with the garage door, and subsequent short stop from high speeds created an objective risk of serious harm to Plaintiff. *See id*. Ultimately, a factfinder may find Defendants Moody and Arena's testimony more credible than Plaintiff's, but that determination is one best left to a jury. *Scholastic, Inc. v. Harris,* 259 F.3d 73, 87 (2d Cir. 2001).

      **b. Subjective Prong.**

The subjective prong of a deliberate indifference claim requires that a plaintiff show "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Thus, while commonly referred to as a subjective prong, it has been defined objectively to match the standard of criminal recklessness. *See id*; *Carrasquillo v. The City of New York*, 324 F.Supp.2d 428, 438-39 (S.D.N.Y. 2004).

As with the objective prong, Defendants' and Plaintiff's versions of events differ. Defendants maintain that Officers Moody and Arena had no recollection of being asked to secure Plaintiff's seatbelt or that they heard any cries coming from the back of the van. Def. L.R. 56.1 Statement ¶ 17, ECF No. 55-2; Pl. Opp. Br. Ex. G at 85, 112, ECF No. 56-6; Pl. Opp. Br. Ex. H at 50, ECF No. 56-8. Plaintiff has testified however that both when she was initially loaded into the van and after the collision with the garage door, that she requested assistance in securing her seatbelt as she was recovering from surgery. Pl. L.R. 56.1 Counterstatement ¶ 35, 44, ECF No. 56-2. Plaintiff informed Defendants that she had fallen after the collision and asserts that all the detainees were screaming after being thrown to the ground when the van stopped short. *Id* at ¶

10

47. Plaintiff asserts these requests for medical attention were met with insults from the Defendants. Pl. L.R. 56.1 Counterstatement ¶ 49-50, ECF No. 56-2. As in *Harris*, it can reasonably be inferred that Defendants "recklessly disregarded [Plaintiff's] safety by failing to secure her with a seatbelt, failing to respond to her protests that she had no seatbelt," and by stopping short after being made aware that Plaintiff had already fallen once following the collision. *See* 2018 WL 1997974 at *4. As such, summary judgment is inappropriate on Plaintiff's deliberate indifference to reasonable safety claim.

    **II.    Plaintiff's Remaining Section 1983 Claims Fail as a Matter of Law.**
        **a.  Plaintiff's Deliberate Indifference to Medical Needs Claim Fails as Plaintiff has not Alleged a Sufficiently Serious Injury.**

    Plaintiff's second federal claim alleges that Defendants were deliberately indifferent to her medical needs resulting from the injuries sustained in her transport to Nassau County Correction Center. Pl. Opp. Br. at 15-17, ECF No. 56. As with her first claim, a claim of deliberate indifference to medical needs has two prongs, an objective and subjective. *See Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005). First, a medical need must be "sufficiently serious" meaning it is of the kind that "may produce death, degeneration, or extreme pain." *Id* (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)) (internal quotations omitted). In determining whether an injury is sufficiently serious, courts may rely on a plaintiff's medical records. *See Lewis v. Cavanaugh*, No. 3:10-cv-00112 (VLB), 2015 WL 540593, at *7 (D. Conn. Feb 10, 2015). Second, defendants must be shown to have known of, or reasonably should have known of, the serious medical condition and either intentionally or recklessly failed to act to address plaintiff's medical needs. *See Harris*, 2018 WL 1997974 at *4; *Narvaez v. City of New York*, No. 16-cv-1980 (GBD), 2017 U.S. Dist. LEXIS 59764, at *6 (S.D.N.Y. Apr. 17, 2017). As

11

detailed below, Plaintiff's alleged injuries are not sufficiently serious to rise to the level of a constitutional violation. Summary judgment is therefore appropriate on this claim.

This Court's decision in *Harris* is again instructive in determining that Plaintiff has failed to show a sufficiently serious injury. In *Harris*, despite suffering from pain in her head, neck, back, and knees, after a negative x-ray and CT, plaintiff was treated for bruising with pain medication and a muscle relaxant. 2018 WL 1997974 at *3. Such injuries were insufficient to sustain a constitutional claim despite the fact that Plaintiff had sustained a head injury serious enough for her to lose consciousness. *Id* at *5.

Similarly, here, when Plaintiff received treatment for her injuries, her x-rays were negative for fractures and she was merely prescribed pain medication to treat her musculoskeletal pain. Def. Mot. Summ. J. Ex. I, ECF No. 55-12 at 35. Plaintiff alleges in her briefing that she suffered a fractured wrist as a result of the fall. Pl. Opp. Br at 17, ECF No. 56. However, the record is clear, and Plaintiff admits, that Plaintiff was not diagnosed with a fractured wrist and instead Plaintiff was told that there *may* be a hairline fracture not visible on the x-ray. *See id*; Pl. L.R. 56.1 Counterstatement ¶ 53, ECF No. 56-2. There is no evidence in the record that Plaintiff's wrist was indeed fractured. While Plaintiff was placed in a cast as a precaution because her pain was a symptom of such a hairline fracture, the relevant inquiry is whether the alleged harm itself is sufficiently serious, not whether such harm is a symptom of a potentially more serious injury. *See Harris,* 2018 WL 1997974 at *5 (citing *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005)) (declining to find a head injury resulting in loss of consciousness sufficiently serious where such a head injury could be indicative of a concussion or traumatic brain injury).

Plaintiff further alleges that her existing knee and shoulder injuries were reinjured during the fall, requiring her to seek further treatment for her pain. Pl. Opp. Br. at 17, ECF No. 56. Defendants respond that Plaintiff's injuries were pre-existing and not sufficiently serious. Def. Br at 13-14, ECF No. 55-3. Plaintiff's argument in her brief that her shoulder was reinjured in her fall and that Officers Moody and Arena were deliberately indifferent to that injury is unsupported by the record. The record is devoid of any indication that Plaintiff's shoulder injury was exacerbated or even prolonged by her fall. Plaintiff's Rule 56.1 Statement states only that the fall had reinjured her knee, not her shoulder. Pl. L.R. 56.1 Statement ¶ 53-54, ECF No. 56-2. Plaintiff makes no mention of her shoulder injury during her Rule 50h testimony. Pl. Opp. Br. Ex. A, ECF No. 56-3. Plaintiff's medical records submitted with her opposition brief list only Plaintiff's knee injuries as being reinjured in her fall, and instead lists her shoulder injury as an existing part of her physical examination. Pl. Opp. Br. Ex. J at 7-8, ECF No. 56-9. Lastly, Plaintiff does not list a shoulder injury in her amended complaint. *See* Pl. Comp., ECF No. 26. As such, there is no issue of fact raised by the record that Plaintiff's shoulder was reinjured, let alone an issue of fact that the injury was sufficiently serious.

Lastly, even viewing the record in the light most favorable to Plaintiff, her knee injuries are not the kind that "may produce death, degeneration, or extreme pain" as needed to satisfy the objectively serious prong of a deliberate indifference to medical needs claim. *Johnson*, 412 F.3d at 403. Plaintiff's medical records detail persistent pain in Plaintiff's knees, which had been surgically treated prior to Plaintiff's arrest. Pl. Opp. Br. Ex. I at 2, ECF No. 56-9. Plaintiff was informed by her doctor that her fall in the van had reinjured her knees which is now being treated with medication and cortisone injections. Pl. Opp. Br. Ex. J at 7-8, ECF No. 56-9. In her Rule 50h testimony, Plaintiff detailed that since her fall, her mobility has become limited in regards to

13

kneeling, running, and climbing stairs due to the pain. Pl. Opp. Br. Ex. A at 46-47. 57-58, ECF No. 56-3.

Putting aside Defendant's argument that these injuries were preexisting, the totality of Plaintiff's knee problems, while no doubt painful, do not rise to the level of an objectively serious medical condition. The cases Plaintiff relies on in her briefing detail injuries of a substantially higher caliber than Plaintiff's consistent knee pain. *See, e.g. Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 211-12, 215-16 (S.D.N.Y. 2014) (declining dismissal where Plaintiff alleged he suffered from heroin withdrawal including nausea, fatigue, aching bones, and seizures); *Boomer v. Lanigan*, No. 00-cv-5540 (DLC), 2002 U.S. Dist. LEXIS 20514, at *20-21 (S.D.N.Y. 2002) (finding a triable issue of fact as to objective seriousness where Plaintiff suffered from epilepsy). Plaintiff, in contrast, was able to walk on her own following her fall without assistance and x-rays revealed no fractures or gross dislocations in her knees or elsewhere. Def. L.R. 56.1 Statement ¶ 21, ECF No. 55-2; Pl. L.R. 56.1 Counterstatement ¶ 53, ECF No. 56-2. Such injuries, without more, are not the kind of potentially fatal, degenerative, or extremely painful medical conditions needed to sustain a deliberate indifference claim. *See Harris*, 2018 WL 1997974 at *3 (finding that head and back pain from an injury resulting in loss of consciousness was not sufficiently serious where plaintiff's x-rays and CT were negative). As such, this Court need not reach the subjective prong of the deliberate indifference test as summary judgment is appropriate based on Plaintiff's failure to demonstrate the objective prong has been satisfied.

b. **Plaintiff's *Monell* Claim fails as a Matter of Law.**

Plaintiff also brings a *Monell* claim for failure to train officers on vehicle safety or implement procedures for seat belting detainees. Pl. Opp. Br. at 21-22, ECF No. 56. Generally

14

speaking, a municipality cannot be held liable for the constitutional violations of its officers. *See Monell*, 436 U.S. at 691 (1978) (holding there is no municipal liability under Section 1983 through a *respondeat superior* theory). However, municipalities may face liability where the alleged misconduct was pursuant to an official policy or custom of the municipality. *Id* at 690-91; *see also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1999).

In arguing for municipal liability, Plaintiff's claim again sounds in a theory of deliberate indifference. A policy or custom may be established by "showing the municipality, alerted to the possible use of excessive force by its police officers, exhibited deliberate indifference." *Vann*, 72 F. 3d at 1049. And, as Plaintiff correctly points out, the deliberate indifference of a municipality may be "inferred if prior complaints of misconduct are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents" *Alwan v. City of New York*, 311 F. Supp. 3d 570, 584 (E.D.N.Y. 2018). Where Plaintiff's argument falters, however, is that Plaintiff has presented no evidence of prior misconduct while transporting detainees by Nassau County officers that would put the County on notice of a need to act. The record exclusively focuses on the events that took place on the day that Plaintiff was transported. While a single act of alleged misconduct may in some circumstances, support a *Monell* claim for municipal liability, a single incident cannot sustain such a claim on the rationale proffered by Plaintiff. *See Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir. 1992).

A plaintiff may otherwise succeed on a *Monell* claim by "establish[ing] that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious'" *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 128 (2d Cir. 2004) (quoting *Vann*, 72 F.3d at 1049). Absent evidence of prior misconduct to provide notice, a plaintiff must show that "in light of the duties

15

assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights" that a "failure to do so would properly be characterized as "deliberate indifference' to constitutional rights." *Walker*, 974 F.2d at 297 (quoting *Coty of Canton v. Harris*, 489 U.S. 378, 389, 390 n.10 (1989)). One such example of a sufficiently obvious needs for training is in the use of deadly force. *Id.*

Turning to Plaintiff's claim, it is clear that training on seatbelt usage is not the kind of obvious need likely to result in the violation of constitutional rights. As discussed above, without additional conduct, the failure to provide a seatbelt to a detainee is not a constitutional violation, undermining any argument that failure to provide training on use of seatbelts is so likely to result in constitutional deprivations as to be categorized as deliberate indifference. *See Jabbar*, 683 F.3d 54 at 58. Furthermore, as there are countervailing safety concerns in favor of *not* providing seat belts in police transport vehicles, it cannot be said that the need for a seat belt policy or training on such a policy is sufficiently obvious that failure to provide such training amounts to deliberate indifference. *See id* (noting that, "inmates . . . could use seatbelts as weapons to harm officers, other passengers, or themselves" in determining that failure to provide a seatbelt is not, on its own, a constitutional violation). Summary judgment is therefore appropriate on Plaintiff's *Monell* claim.

### III. Plaintiff's State Law Claims are Subject to this Court's Pendent Jurisdiction as the Claims Arise Out of a Common Nucleus of Operative Fact.

Defendants argue that this Court should decline to exercise pendent jurisdiction over Plaintiff's state law claims. Def. Br. at 14-15, ECF No. 55-3. This argument is based solely on a presumption that, in Defendants' view, summary judgment should be granted on all three of Plaintiff's federal claims. *Id*. Defendants do not raise any argument on the merits suggesting that pendent jurisdiction is improper in this case. Because one of Plaintiff's federal claims remain and

because that federal claim and Plaintiff's state law claims "derive from a common nucleus of operative fact," exercising pendent jurisdiction over Plaintiff's state law claims is proper. *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966).

## CONCLUSION

For the reasons given, Defendants' motion for summary judgment as to Plaintiff's deliberate indifference to medical needs and *Monell* claim is GRANTED but DENIED as to Plaintiff's deliberate indifference to reasonable safety claim and state law claims.

**SO ORDERED.**

/s/ Steven Tiscione<br>
Steven L. Tiscione<br>
United States Magistrate Judge<br>
Eastern District of New York

Dated: Central Islip, New York
       March 13, 2023