**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**-----------------------------------------------------------------X**

| | | |
|---|---|---|
| **KENISHA MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **18-CV-4786 (ST)** |
| **-against-** | ) | |
| | ) | |
| **COUNTY OF NASSAU, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**-----------------------------------------------------------------X**

# PLAINTIFF'S MOTION FOR NEW TRIAL PURSUANT TO FRCP 59(a)

**LAW OFFICES OF**
**FREDERICK K. BREWINGTON**
**Attorneys for Plaintiff**
**556 Peninsula Boulevard**
**Hempstead, New York 11550**
**(516) 489-6959**

***OF COUNSEL: FREDERICK K. BREWINGTON***

## Preliminary Statement

Plaintiff Kenisha Moore submits this memorandum of law in support of her post-trial motion, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, for a new trial. The credible evidence demonstrated that the defendants' failure to secure Ms. Moore with a seat belt while transporting her from the District Court to the Nassau County Correctional Center caused her injuries. Thus, in order to prevent a miscarriage of justice, this Court should order a new trial.

## Statement of Facts

Because the Court presided over the trial, Ms. Moore does not recite the evidence presented at trial. Rather, she relies upon the record in support of her motion. *See* Declaration of Frederick K. Brewington in Support of Plaintiff's Motion for a New Trial, dated October 8, 2024.

## Argument

**A new trial should be granted because the greater weight of the evidence established that it was negligent not to secure Ms. Moore without a seat belt before transporting her to the Nassau County Correctional Center**

Ms. Moore, Ms. Raniqua Bolden, and Ms. Cynthia Simpkins were transported from the Nassau County District Court to the Nassau County Correctional Center on the afternoon of August 25, 2017. The undisputed evidence demonstrated that the defendants never placed a seat belt on Ms. Moore. Because the failure to do so led to Ms. Moore's injuries, this Court should set aside the jury's verdict in favor of the defendants and grant Ms. Moore's motion for a new trial.

"A grant of a new trial on the ground that the verdict was against the weight of the evidence is appropriate if 'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice.'" *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 634-635 (2d Cir. 2002). Unlike a motion for judgment as a matter of law, on a motion for a new trial, the court must weigh the evidence *de novo*, and is not required to draw inferences in favor of the nonmoving party. In *United*

*States v. Landau*, 155 F.3d 93 (2d Cir. 1998), the district court had granted the plaintiff's Rule 50 motion for judgment as a matter of law. The Court of Appeals disagreed, but granted a new trial after comparing the differing standards under Rules 50 and 59:

> Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict. . . . Also unlike a motion for judgment as a matter of law, a trial judge considering a motion for a new trial "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner.

*Id.* at 104 (internal citations and quotations omitted). *See DLC Management Corp. v. Cohen*, 163 F.3d 124, 133-134 (2d Cir. 1998). The Second Circuit specifically held that it is "inherent in the proposition that the district judge may weigh the evidence that the judge will consider the credibility of witnesses." *Landau*, 155 F.3d at 104 (citing *Song v. Ives Laboratories, Inc*., 957 F.2d 1041, 1047 (2d Cir. 1992)). Of course,

> [a] jury's credibility assessments are entitled to deference. . . . However, these principles of deference to the jury do not override the trial judge's duty to see that there is no miscarriage of justice. . . . If convinced that there has been [a miscarriage of justice] then it is [the trial judge's] duty to set the verdict aside. . . .

*Id*. at 104-105 (internal citations and quotations omitted, bracketed language in original).[1]

The most compelling reason to order a new trial is when there is objective evidence in the record supporting the conclusion that the jury's verdict is against the weight of the evidence. Several courts in this Circuit have set aside jury verdicts and ordered new trials based entirely upon the trial judge's assessment of witness credibility, without any objective evidence favoring one side or the other. In *Song v. Ives Laboratories, Inc*., 957 F.2d 1041 (2d Cir. 1992), for example, an

---

[1] In *Landau*, the Court of Appeals remanded the case to the district court to consider the plaintiff's new trial motion, which was granted at *Unger v. United States*, 25 F. Supp. 2d 411 (S.D.N.Y. 1998).

employment discrimination case, "the jury was presented with conflicting testimony concerning Ives' stated reasons for Song's termination. . . ." *Id*. at 1045. Yet, the Second Circuit affirmed the trial court's grant of a new trial

> because the evidence of Song's unsatisfactory job performance rested almost entirely on the testimony of Song's co-workers regarding his allegedly poor inter-personal skills and professional relationships, the district court was in a unique position to assess the credibility of the witnesses and to determine the weight which should be accorded their testimony.

*Id*. at 1047. *See Busch v. The City of New York*, 224 F.R.D. 81, 95 (E.D.N.Y. 2004) (granting plaintiff's motion for a new trial "because the jury's verdict on the excessive force shooting claim is against the weight of the evidence presented at trial, and permitting the verdict to stand would result in a miscarriage of justice."); *Finn-Verburg v. New York State Dept. of Labor*, 165 F. Supp. 2d 223, 228 (N.D.N.Y. 2001) ("In light of the overwhelming evidence supporting plaintiff's claim that Alley's treatment of her was gender based," the jury's conclusion otherwise "was seriously erroneous").

Regarding Ms. Moore's claim of negligence, the Court instructed the jury in relevant part as follows:

> Plaintiff claims that the defendants acted negligently by failing to perform their duties as a reasonably prudent and careful law enforcement officer would have done under similar circumstances by carelessly and recklessly transporting her in the van without securing her in a seat belt to ensure her safety, by carelessly subjecting her to unreasonable risks of safety in the van and by carelessly, recklessly and deliberately disregarding requests for medical care.
>
> Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same

circumstances.

(Tr. 848-49.)

Here, the undisputed evidence established that the defendants failed to secure Ms. Moore with a seat belt while transporting her from court to the Nassau County Correctional Center. Ms. Moore could not belt herself because of the way she was handcuffed. As she told the jury, the defendants handcuffed her wrists in the front. They were so tight that she could not turn around. Ms. Moore remained handcuffed until her arrival at the correctional facility. (Tr. 350-52.)

Ms. Moore's testimony also established that the defendants knew she needed assistance. Ms. Moore testified that she repeatedly requested assistance from Arena and Moody. First, because she was handcuffed in the front and needed to step up to enter the rear of the bus, Ms. Moore asked Arena to assist her into the van. Arena responded that it was not her responsibility. (Tr. 354-55.) Ultimately, an officer, who was neither Arena nor Moody, assisted Ms. Moore into the van. (Tr. 355.)

Ms. Moore asked Arena for assistance putting on her seat belt as soon as she had entered the van. Arena responded that she could put it on her self. Ms. Moore then tried unsuccessfully to put on a seat belt; she could not do so because the belt was a lap belt that she could not adjust to her body. She then asked Ms. Bolton and Ms. Simpkins for assistance, but they also could not do it. (Tr. 355-56.)

As the van began to pull away from the courthouse it struck a gate, which caused the van to become lodged. This required the defendants to use a different van to transport Ms. Moore and her fellow detainees to the correctional center. (Tr. 145-46; 357-58.)[2] Ms. Moore described again what

[2] While the parties differed in how the accident occurred, there was no dispute at trial that an accident had occurred, or that a second van was used to transport the detainees.

transpired as she was moved from the first van to the second van. She shared with the jury how she again asked Arena and Moody to assist with her seat belt. And she shared how Arena, in Moody's presence,"said the seat belts is there. We want to put them on put them on ourselves. That's not their job." (Tr. 363-63.)

Ms. Bolton, whom Ms. Moore did not know before August 25th (Tr. 351), corroborated Ms. Moore's testimony in material respects. Ms. Bolton confirmed that she was handcuffed to Ms. Simpkins before entering the first van and that Ms. Moore was handcuffed by herself. (Tr. 295.) She confirmed that the seat belts were lap belts and that neither Arena nor Moody assisted them with the seat belts. (Tr. 296 ("So the seat belts are like hanging down. Just like hanging down there. And nobody offered to like put us in the seat belt.").) And Ms. Bolton confirmed that Ms. Moore asked Arena for assistance and that Arena said no. (Tr. 298 ("she said that's not my fucking job.").)

Ms. Bolton also corroborated in important ways Ms. Moore's testimony regarding what happened when they were transferred from the first van to the second van. Like Ms. Moore, Ms. Bolton confirmed that Ms. Moore had requested assistance in putting on their seat belts – Ms. Bolton testified that she also requested assistance. And like Ms. Moore, Ms. Bolton testified that, although she did not recall the defendants' response, neither Arena nor Moody helped them with their seat belts.

Finally, Ms. Bolton corroborated Ms. Moore's testimony in one additional way. Ms. Moore described how Moody, while driving the van on Hempstead Turnpike, slammed on the brakes to avoid rear-ending a truck that had come to an abrupt halt, and how that caused the detainees in the rear of the van to fall out of their seats. (Tr. 364.) Ms. Bolton shared with the jury the same sequence of events. She told the jury how the van came to an abrupt stop, which caused Ms. Moore and Ms. Bolton to fall out of their seats with Ms. Moore landing on top of her. (Tr. 300-01.)

The defendants had no response to this testimony. Arena's testimony made crystal clear that she had no recollection of the events of August 25, 2017. Regarding her interaction with Ms. Moore on that day, she had no recollection of taking Ms. Moore to the initial van, no recollection of whether Ms. Moore needed help getting into the van, and no recollection of anything Ms. Moore may or may not have said to her, including whether she requested help with her seat belt. (Tr. 116-17.)

Arena had a similar lack of recollection regarding her interaction with Ms. Moore when the detainees were moved to the second van. She did not recall Ms. Moore entering the second van, what requests Ms. Moore had made to her, what responses she gave to Ms. Moore, or how difficult it was for Ms. Moore to enter and exit the van. (Tr. 153-54.)

Moody's testimony was of the same kind as Arena's. He had no recollection of having any contact with Ms. Moore. (Tr. 212.) He did not remember her getting into the van, how she was handcuffed, or if Ms. Moore was limping before entering the van. (Tr. 234-35.)

Confronted with their inability to articulate what occurred on August 25th, the defendants only defense was that they never assist a detainee in putting on their seat belt because it was too dangerous given the close quarters, which they claimed would permit a detainee to attack a corrections officer. (Tr. 164-65.)[3] But this "defense" was really no defense at all. Arena admitted that when three detainees were being transported, one woman would place her wrists in front of her while handcuffs were placed on them while the other two detainees were handcuffed to each other by their right wrists. (Tr. 112-13.) This was consistent with Ms. Moore's testimony about how she was handcuffed, and Ms. Bolton's testimony about how she was handcuffed to Ms. Simpkins. (Tr.

---

[3] While Arena provided this testimony, Moody was not asked any such questions.

295 ("So when they load us up into the van, they handcuffed me to, like, another woman. And Kenisha was by herself.").)[4] More important, Arena and Moody could have easily addressed their concerns by either placing Ms. Moore in the van first and then assisting with her seat belt, or, if Bolton and Simpkins were already in the van, removing them while they assisted Ms. Moore.

In *Lombardo v. Columbia Dentoform Corp.*, 103 F.R.D. 630 (S.D.N.Y. 1984), Judge Weinfeld granted defendants' motion for a new trial. In doing so, he used language suitable to the instant case: "[t]he evidence submitted by defendant to support its claim of good cause for plaintiff's discharge was substantial and in large measure uncontradicted. No apparent reason for its rejection exists." *Id*. at 635. Here, Ms. Moore's evidence of negligence was substantial and in large measure uncontradicted. Because a simple dose of ordinary care would have prevented the injuries Ms. Moore sustained, the jury had "[n]o apparent reason" to reject this testimony. *Id*. Thus, the jury's verdict represents a serious miscarriage of justice, and a new trial should be ordered.

**<u>CONCLUSION</u>**

For the foregoing reasons, Ms. Moore's motion for a new trial should be granted, together with such other and further relief as is just and proper.

---

[4] Arena's testimony about how two detainees would be handcuffed to one another by their right wrists made no sense because they would not be able to sit in the van without one of them risking injury to her right wrist.

Dated: Hempstead, New York
October 8, 2024

Respectfully submitted,

By: ___________/s/________________________
FREDERICK K. BREWINGTON

LAW OFFICES OF FREDERICK K. BREWINGTON
Counsel for Plaintiff
551 Peninsula Blvd.
Hempstead, NY 11550
(516) 489-6959